UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                                  :
DOMINGA REYES, on behalf of and as                :
parent and guardian of R.P.,                      :     12 Civ. 2113 (WHP)
                                                  :
            Plaintiff,                            :     MEMORANDUM & ORDER
                                                  :
            -against-                             :
                                                  :
NEW YORK CITY DEPARTMENT                          :
OF EDUCATION,                                     :
                                                  :
            Defendant.                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

```
┌──────────────────────────────┐
│ USDC SDNY                     │
│ DOCUMENT                      │
│ ELECTRONICALLY FILED          │
│ DOC #:                        │
│ DATE FILED: 12/11/12          │
└──────────────────────────────┘
```

WILLIAM H. PAULEY III, District Judge:

            Plaintiff Dominga Reyes brings this action under the Individuals with Disabilities

Education Act ("IDEA") on behalf of her minor son, R.P. She seeks reversal of a final

administrative decision rendered by a New York State Review Officer ("SRO"), who held that

the New York City Department of Education ("DOE") offered R.P. a free, appropriate public

education ("FAPE") for the 2010-11 school year and, as such, denied Reyes's request that the

DOE finance her unilateral placement of R.P. at the Rebecca School for that year. In ruling for

the DOE, the SRO overturned the decision of an Impartial Hearing Officer ("IHO"), who had

concluded that the DOE failed to provide R.P. with a FAPE for 2010-11. Both parties now move

for summary judgment. For the following reasons, the DOE's motion is granted and Reyes's

motion is denied.

BACKGROUND

I.    R.P.'s Disability and Educational History

R.P. is a seventeen year-old student diagnosed with autism, sensory integration dysfunction, moderate mental retardation, and attention deficit hyperactivity disorder. (Plaintiff's Statement of Material Facts Pursuant to Local Civil Rule 56.1, dated July 13, 2012 ("Pl. Stmt.") ¶¶ 1,3; Defendant's Local Rule 56.1 Statement of Undisputed Material Facts, dated Aug. 30, 2012 ("Def. Stmt.") ¶1.)  As a result of these conditions, R.P. has difficulty processing information that he receives through his senses.  (Pl. Stmt. ¶ 4.)  He must receive sensory input throughout the day in order to remain calm and maintain control over his behavior.  (Pl. Stmt. ¶ 5.)

Since R.P. was three years old, the DOE identified him as a student with a disability.  (Pl. Stmt. ¶ 10.)  In May 2007, R.P. began attending the Rebecca School in Manhattan, a private school for disabled students.  (Pl. Stmt. ¶ 13.)  He attended the Rebecca School during the 2007-08 and 2008-09 school years.  (Pl. Stmt. ¶ 15.)

II.   Impartial Hearing for the 2009-10 School Year

For the 2009-10 school year, the DOE recommended placing R.P. in a special class at P.S. 79, a public school located in Manhattan.  (Pl. Stmt. ¶¶ 16-17.)  Reyes objected to the DOE's recommendation and requested an impartial hearing to seek payment for the cost of R.P.'s continued attendance at the Rebecca School.  (Pl. Stmt. ¶ 18.)  On November 19, 2010, IHO Ellen Fluhr Thomas concluded that the DOE denied R.P. a FAPE for the 2009-10 school year, ordered the DOE to reimburse Reyes for the tuition deposit she paid to the Rebecca School,

and directed the DOE to pay the balance of the Rebecca School tuition.  The DOE did not appeal
the IHO's decision.  (Pl. Stmt. ¶¶ 19-26.)

III.    The 2010-11 School Year

On May 17, 2010, the DOE's Committee on Special Education ("CSE") met to
prepare R.P.'s Individualized Education Plan ("IEP") for the 2010-11 school year.  (Pl. Stmt. ¶
27.)  The attendees at the IEP meeting were CSE psychologist Rose Fochetta, CSE special
education teacher and district representative Feng Ye, parent member Carmen Garcia, and
Reyes.  Megan Merwin, R.P.'s teacher at the Rebecca School, participated by telephone.  (Pl.
Stmt. ¶ 28.)

The IEP prepared as a result of that meeting set eighteen annual goals for R.P. and
recommended placing him in a specialized public classroom for a twelve-month school year with
a 6:1:1 staffing ratio (i.e., six students, one teacher, and one paraprofessional).  (Pl. Stmt. ¶¶ 29-
30.)  The IEP also recommended the provision of services such as speech-language therapy,
counseling, occupational therapy, and physical therapy.  (Pl. Stmt. ¶ 29.)  Further, the IEP
required a 1:1 "transitional" paraprofessional for R.P. for a three-month period.  (Pl. Stmt. ¶ 33.)

By notice dated June 15, 2010, the DOE informed Reyes that R.P.'s
recommended placement for the 2010-11 school year was P.S. 79, the same public school that
the DOE had recommended for the 2009-10 school year.  (Pl. Stmt. ¶¶ 46-47.)  In late June 2010,
Reyes and Mary Wiener—R.P.'s occupational therapist at the Rebecca School—visited P.S. 79.
(Pl. Stmt. ¶ 49.)  Reyes did not like what she saw.  For instance, when she asked two classroom
teachers what type of "sensory diet," if any, was provided in their classrooms, both teachers
responded by discussing food.  (Pl. Stmt. ¶¶ 54-55.)  Further, when Reyes asked a teacher what

-3-

would happen if R.P. needed to be regulated, the teacher showed her a corner with mats, a bookshelf, and a deflated ball. (Pl. Stmt. ¶ 57.) After her visit, Reyes concluded that P.S. 79 could not meet R.P.'s sensory needs, that he would not receive sufficient individual attention, and the teaching methodology employed at the school—the Treatment and Education of Autistic and related Communication Handicapped Children ("TEACCH") methodology—would be inappropriate for him. (Pl. Stmt. ¶ 67.) When Reyes complained about the placement to the DOE, however, the DOE did not offer R.P. an alternate placement for 2010-11. (Pl. Stmt. ¶¶ 68-70.) Reyes ultimately decided to re-enroll R.P. at the Rebecca School for September 2010 to June 2011. (Pl. Stmt. ¶ 71.)

        For the 2010-11 school year, the Rebecca School placed R.P. in an eight-student class with one head teacher and three assistant teachers (i.e., an 8:1:3 classroom). (Pl. Stmt. ¶ 81.) The Rebecca School also provided R.P. with speech-language therapy, occupational therapy, physical therapy, and music therapy. (Pl. Stmt. ¶ 89.) To meet R.P.'s sensory needs, the Rebecca School created an individualized "sensory diet" that provided movement and sensory input activities for him to engage in every thirty minutes throughout the school day. (Pl. Stmt. ¶ 100.) The Rebecca School features two sensory gyms, each of which contains such equipment as floor and wall mats, trampolines, balancing equipment, and swings. (Pl. Stmt. ¶ 97.) R.P.'s classroom also featured sensory equipment including a large therapy ball, weighted balls, mats, and "theraputty." (Pl. Stmt. ¶ 98.)

        On March 4, 2011, Reyes filed a due process complaint contending that the DOE denied her son a FAPE for the 2010-11 school year. (Pl. Stmt. ¶ 108.) She alleged, among other things, that (1) the IEP's recommendation for placement in a 6:1:1 class with three months of 1:1

-4-

paraprofessional support was inadequate; (2) P.S. 79 lacked the programs, physical space, and equipment to meet R.P.'s sensory needs; and (3) the TEACCH methodology used at P.S. 79 was inappropriate for R.P. (Pl. Stmt. ¶ 109.) The case was assigned to IHO Susan C. Lushing, who held hearings on four days between April 28, 2011 and July 21, 2011. (Pl. Stmt. ¶¶ 111-12.) At the hearings, the DOE presented the testimony of two witnesses, Rose Fochetta—the CSE psychologist—and P.S. 79 classroom teacher Anne Duquette. (Pl. Stmt. ¶ 114.) Reyes testified on her own behalf and presented the testimony of five witnesses from the Rebecca School. (Pl. Stmt. ¶ 115.)

On August 23, 2011, the IHO issued her Findings of Fact and Decision on Reyes's claim, concluding that the DOE failed to provide a FAPE for the 2010-11 school year. (Pl. Stmt. ¶¶ 119-20.) Specifically, the IHO determined that the DOE failed to demonstrate that placement in a 6:1:1 classroom would meet R.P.'s significant sensory needs. (Pl. Stmt. ¶¶ 120-21.) The IHO further opined that the DOE's provision of a three-month transitional paraprofessional was insufficient. (Pl. Stmt. ¶ 123.) While Fochetta testified that 1:1 paraprofessional support could be extended beyond three months if necessary, the IHO concluded that this representation was impermissibly speculative and contrary to the plain terms of the IEP. (Pl. Stmt. ¶ 123.) Regarding P.S. 79, the IHO found that there was "no proof that the resources available at the school would meet [R.P.'s] significant sensory needs," and further that the TEACCH methodology was inappropriate for him. (Pl. Stmt. ¶ 124.) The IHO also concluded that R.P.'s placement at the Rebecca School was appropriate and that there was no "equitable impediment" to Reyes's request for direct tuition payment. (Pl. Stmt. ¶¶ 125-26.) Accordingly, the IHO ordered the DOE to reimburse Reyes for the $500 tuition payment she

made to the Rebecca School and to pay the "outstanding tuition balance" of $54, 215 directly to the school.  (Pl. Stmt. ¶ 127.)

On September 27, 2011, the DOE appealed the IHO's decision to the New York SRO.  (Pl. Stmt. ¶ 128.) On November 22, 2011, SRO Justyn P. Bates reversed the IHO's decision and concluded that the DOE did, in fact, offer a FAPE for the 2010-11 school year.  (Pl. Stmt. ¶ 137.)  In so holding, the SRO relied heavily on Fochetta's testimony for the proposition that "the DOE's recommended education program . . . consisting of a 6:1[:]1 special class in a specialized school with related services was, at the time of its development, reasonably calculated to enable R.P. to receive educational benefits[.]"  (Decision No. 11-124 of the State Review Officer, dated Nov. 22, 2011 ("SRO Decision") at 13.)  The SRO also determined that (1) there was no evidence that R.P. required 1:1 paraprofessional support for longer than three months and (2) if he did, his IEP would have been modified to provide such support.  (Pl. Stmt. ¶ 144.)  Turning to P.S. 79, the SRO concluded that "the parent's concerns regarding the assigned school's ability to address the student's sensory needs [] and the appropriateness of the TEACCH methodology utilized in the assigned 6[:]1:1 special class . . . are not supported by the preponderance of the evidence contained in the hearing record."  (SRO Decision at 18.) Accordingly, the SRO reversed the IHO's decision.  (SRO Decision at 18.)  Because the SRO ruled against Reyes on the provision of a FAPE, he did not review the IHO's determinations regarding the appropriateness of the Rebecca School or equitable considerations.  (SRO Decision at 18.)  This federal lawsuit ensued.

DISCUSSION

I.      Statutory Framework

Under the IDEA, "states receiving federal funds are required to provide all children with disabilities a free appropriate public education." Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 107 (2d Cir. 2007) (internal quotation marks omitted).  To meet this requirement, the FAPE must provide "special education and related services" tailored to meet the unique needs of the particular child, 20 U.S.C. § 1401(a)(18), and it must be "reasonably calculated to enable the child to receive educational benefits." Bd. of Educ. v. Rowley, 458 U.S. 176, 207 (1982).

The Individualized Education Plan is the "centerpiece" of the IDEA.  D.D. ex rel. V.D. v. N.Y.C. Bd. of Educ., 465 F.3d 503, 507 (2d Cir. 2006) (citation omitted).  An IEP is "a written statement that 'sets out the child's present education performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that enable the child to meet those objectives.'" D.D., 465 F.3d at 508 (2d Cir. 2006) (quoting Honig v. Doe, 484 U.S. 305, 311 (1988)).

In New York, responsibility for developing an IEP rests with the local CSE. Gagliardo, 489 F.3d at 107.  CSE members are appointed by school boards or the trustees of school districts. Gagliardo, 489 F.3d at 107.  The IEP must provide "special education and related services tailored to meet the unique needs of a particular child, and be reasonably calculated to enable the child to receive educational benefits." Gagliardo, 489 F.3d at 107 (citation omitted).  "A school district fulfills its substantive obligations under the IDEA if it provides an IEP that is likely to produce progress, not regression, and if the IEP affords the

student with an opportunity greater than mere trivial advancement." T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist., 554 F.3d 247, 254 (2d Cir. 2009) (internal quotation marks omitted).

Parents may challenge the adequacy of their child's IEP in an "impartial due process hearing" before an IHO appointed by the local board of education. Gagliardo, 489 F.3d at 108 (citations omitted). The IHO's decision may be appealed to an SRO, and the SRO's decision may be challenged in state or federal court. Gagliardo, 489 F.3d at 108. In reviewing an SRO's decision, the district court may "receive the records of the administrative proceedings" and "hear additional evidence." 20 U.S.C. § 1415(i)(2)(C). The district court then "shall grant such relief as the court determines is appropriate," "basing its decision on the preponderance of the evidence." 20 U.S.C. § 1415(i)(2)(C). Under the IDEA, "appropriate" relief may include reimbursement to the parents for the cost of a private education. See Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 246 (2009).

II.    Legal Standard

Summary judgment in an IDEA case serves as "a pragmatic procedural mechanism for reviewing" an administrative determination. Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ., 397 F.3d 77, 83 n. 3 (2d Cir. 2005). "While the district court must base its decision on the preponderance of the evidence, it must give due weight to the administrative proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 417 (2d Cir. 2009) (citation omitted). When, as here, "an IHO and the SRO reach conflicting conclusions, [courts] defer to . . . the SRO's decision." R.E. v. N.Y.C.

Dep't of Educ., 694 F.3d 167, 189 (2d Cir. 2012).  But judicial deference is not absolute.  Rather, "a court must defer to the SRO's decision on matters requiring educational expertise unless it concludes that the decision was inadequately reasoned, in which a better-reasoned IHO opinion may be considered instead.  R.E., 694 F.3d at 189.  Of course, "[i]n many determinations made by administrative officers, the district court's analysis will hinge on the kinds of considerations that normally determine whether any particular judgment is persuasive, for example whether the decision being reviewed is well-reasoned, and whether it was based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." M.H. v. N.Y.C. Dep't of Educ., 685 F.3d 217, 244 (2d Cir. 2012).  "But the district court's determination of the persuasiveness of an administrative finding must also be colored by an acute awareness of institutional competence and role.  As the Supreme Court made clear in Rowley, the purpose of the IDEA is to provide funding to states so that they can provide a decent education for disabled students consistent with their traditional role in educating their residents." M.H., 685 F.3d at 244.  "In policing the states' adjudication of IDEA matters, the courts are required to remain conscious of these considerations in determining the weight due any particular administrative finding." M.H., 685 F.3d at 244.

Further, New York law allocates the burden of persuasion and production to the school district in an impartial hearing.  See N.Y. Educ. Law 4404(1)(c).  But "[b]ecause the [SRO] in the case[] at bar concluded that the IEP[] [was] proper, and the courts are bound to exhibit deference to that decision, the burden of demonstrating that the . . . [SRO] erred is properly understood to fall on the plaintiffs." M.H., 685 F.3d at 225 n.3.  And to the extent a court "must determine whether the state administrative decisions were supported by a

preponderance of the evidence, which party bore the burden of persuasion in the state review scheme is only relevant if the evidence was in equipoise." M.H., 685 F.3d at 225 n.3.

III.    Adequacy of the IEP

Reimbursement for private school tuition is appropriate if the evidence shows "(1) that the proposed IEP was inadequate to afford the child an appropriate public education, and (2) that the private education services obtained by the parents were appropriate to the child's needs." Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 129 (2d Cir.1998) (citing Sch. Comm. of Burlington v. Dep't of Educ. of Mass., 471 U.S. 359, 370 (1985)); Florence Cnty. Sch. Dist. Four v. Carter, 510 U.S. 7, 12–14 (1993)).  Parents must also show "that the equities favor them." R.E., 694 F.3d at 185 (citing Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 (2d Cir. 2005)).  In determining whether the proposed IEP was inadequate, courts examine (1) whether the IEP was developed according to the IDEA's procedural requirements and (2) whether the IEP is substantively appropriate in that it is "reasonably calculated to enable the child to receive educational benefits." A.C. ex rel. M.C. v. Bd. of Educ. of Chappaqua Cent. Sch. Dist., 553 F.3d 165, 171 (2d Cir. 2009) (internal quotations and citations omitted).

A.  Procedural Compliance

As a preliminary matter, there is no dispute that the development of R.P.'s IEP complied with the IDEA's procedural requirements.  To be sure, procedural regularity does not necessarily ensure that an IEP is substantively adequate.  But "[t]he initial procedural inquiry in an IDEA case is no mere formality, as adequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive

content in an IEP." T.P., 554 F.3d at 252-53 (quoting Walczak, 142 F.3d at 129) (internal quotation marks omitted).

  B. Substantive Adequacy

         The SRO concluded that the DOE provided a FAPE for R.P.'s 2010-11 school year. An SRO's determinations regarding "the substantive adequacy of an IEP" are entitled to heightened judicial deference, particularly when, as here, the parties introduce no new evidence that was not before the IHO or the SRO. M.H., 685 F.3d at 244. Nevertheless, Reyes contends that the SRO committed several legal and logical errors regarding the substantive adequacy of the IEP, and this Court should defer instead to the IHO's decision. In particular, Reyes contends that the SRO improperly placed the burden of persuasion on her, rather than on the DOE. But, as discussed in greater detail below, the SRO grounded his findings in record evidence and any purported burden-shifting was inconsequential.

    1. 6:1:1 Classroom with Transitional 1:1 Paraprofessional

         First, Reyes attacks the SRO's conclusion that the IEP's recommendation of a 6:1:1 classroom with a "transitional" 1:1 paraprofessional was substantively adequate. In reaching this determination, the SRO observed that (1) Fochetta testified that a 6:1:1 classroom could meet R.P.'s needs; (2) R.P. lacked 1:1 classroom support at the Rebecca School; and (3) the IEP could be modified if necessary to extend the provision of 1:1 paraprofessional support.

         The SRO's reliance on Fochetta's testimony that the IEP could be modified was improper. Under the IDEA, "[s]uch testimony may not be used to materially alter a deficient written IEP by establishing that the student would have received services beyond those listed in the IEP." R.E., 694 F.3d at 174. Nevertheless, the SRO's unwarranted reliance on

"retrospective testimony" does not render the rest of his analysis unpersuasive. R.E., 694 F.3d at 192 (deferring to SRO's substantive analysis notwithstanding "his reliance on improper testimony"). First, the SRO credited Fochetta's testimony that the CSE recommended a 6:1:1 classroom because such a placement tended to be language-based and would offer "a lot of support." (SRO Decision at 12.) Second, the SRO relied on Fochetta's testimony that the panoply of "weekly related services" outlined in the IEP would, in combination with the 6:1:1 classroom, "promote progress." (SRO Decision at 12.) Finally, the SRO noted that the provision of a transitional 1:1 paraprofessional for three months was adequate because, inter alia, R.P. did not receive 1:1 paraprofessional support at the Rebecca School. (SRO Decision at 13.) In view of this evidence, the SRO reasonably concluded that the educational program embodied in the IEP was substantively adequate. The SRO's well-supported determination is therefore entitled to deference. See M.H., 685 F.3d at 244.

        In arguing against the SRO's conclusions, Reyes maintains that 1:1 paraprofessional support was unnecessary at the Rebecca School because of the higher student-faculty ratio in R.P.'s classroom. Reyes also argues that there is no reason to believe that a 6:1:1 class at P.S. 79 would be appropriate after only three months of 1:1 paraprofessional support if it was not appropriate from the outset. But "because public resources are not infinite, federal law does not secure the best education money can buy; it calls upon government, more modestly, to provide an appropriate education for each disabled child." M.H., 685 F.3d at 246 (quoting Lunceford v. Dist. of Columbia Bd. of Educ., 745 F.2d 1577, 1583 (D.C. Cir. 1984) (Bader Ginsburg, J.)) (internal quotation marks and alterations omitted). Here, the SRO reasonably relied on the CSE psychologist's testimony that R.P. could make progress in a 6:1:1 classroom

-12-

with a wide array of related services and a transitional 1:1 paraprofessional.  Even in reaching a

contrary determination, the IHO acknowledged that "in terms of age and functional levels, the

composition of the class at PS [sic] 79 was appropriate."  (Hearing Officer's Findings of Fact

and Decision, Case No. 132427, dated Aug. 23, 2011.)  Under the IDEA, an IEP is adequate if it

is "likely to produce progress, not regression, and if the IEP affords the student with an

opportunity greater than mere trivial advancement."  T.P., 554 F.3d at 254 (internal quotation

marks omitted).  And courts are ill-equipped to choose "between the views of conflicting experts

on a controversial issue of education policy[.]"  Grim v. Rhineback Cent. Sch. Dist., 346 F.3d

377, 383 (2d Cir. 2003); see also R.E., 694 F.3d at 192 ("The adequacy of 1:1 paraprofessional

support as opposed to 1:1 teacher support is precisely the kind of education policy judgment to

which [courts] owe the state deference if it is supported by sufficient evidence[.]").  Accordingly,

this Court defers to the SRO's determination that the faculty-student ratio and related services

outlined in the IEP offered a FAPE to R.P.

    2.  Adequacy of P.S. 79

       Next, Reyes disputes the SRO's conclusion that P.S. 79 would be an adequate

placement for R.P.  In reaching this determination, the SRO relied on the testimony of Anne

Duquette, the special education teacher of the assigned class.  Duquette testified that the sensory

equipment in her classroom in summer 2010 consisted of mats and a bean-bag chair and that the

school also provided access to a "polar" (weighted) vest, therapy balls, ramp-shaped mats, and

tables.  Duquette also testified that P.S. 79's occupational therapist instructed teachers on how to

implement such items in order to meet students' sensory needs.  And she noted that if P.S. 79

-13-

lacked certain sensory equipment recommended in the IEP, the school's occupational therapist

would order it. (SRO Decision at 15.)

In determining that P.S. 79 could meet R.P.'s needs, the SRO did not quarrel with

Reyes's assertion that the sensory equipment at the Rebecca School was superior. Unlike the

Rebecca School, P.S. 79 did not provide suspended equipment or swings. And at the impartial

hearing, the Rebecca School's OT supervisor opined that suspended equipment was the most

effective therapy to address R.P.'s vestibular input needs. Nevertheless, the SRO noted that "the

district was not required to . . . provide the optimal level of services, or even [] provide [a] level

of services that would confer additional benefits." (SRO Decision at 15 (internal quotation

marks omitted).) While the SRO recognized "that the parent may have preferred a school with

sensory equipment more similar to the sensory equipment at the Rebecca School," (SRO

Decision at 16), he concluded that P.S. 79 could meet R.P.'s needs.

The SRO's determination regarding P.S. 79 was thorough and careful, making

deference "particularly appropriate." M.H., 685 F.3d at 241, 245. As the SRO recognized, the

DOE "need not furnish every special service necessary to maximize each handicapped child's

potential." M.H., 685 F.3d at 224 (internal quotation marks omitted); see also Bryant v. N.Y.

State Educ. Dep't, 692 F.3d 202, 215 (2d Cir. 2012) ("The IDEA guarantees only that students

with disabilities are provided an appropriate education, not one that provides everything that

might be thought desirable by loving parents." (internal quotation marks omitted)). Reyes

disputes Duquette's representation that P.S. 79 could order any needed equipment that it lacked,

and points to Rebecca School occupational therapy supervisor Mary Wiener's testimony that she

did not observe any equipment at P.S. 79 capable of addressing R.P.'s need for vestibular input.

But "[s]peculation that the school district will not adequately adhere to the IEP is not an appropriate basis for unilateral placement." R.E., 694 F.3d at 195. And the SRO properly relied on Duquette's testimony, which "explain[ed] or justifie[d] the services listed in the IEP." R.E., 694 F.3d at 186. Accordingly, this Court defers to the SRO's well-reasoned conclusion that P.S. 79 could meet R.P.'s sensory needs.

   3.   The TEACCH Methodology

         At P.S. 79, R.P.'s teacher would have utilized the TEACCH methodology. Contrary to the SRO's findings, Reyes contends that the TEAACH methodology is inappropriate for her son because it creates an environment in which students independently complete certain tasks in sequence. She cites the testimony of Tina McCourt—the Rebecca School's Director— for the proposition that R.P. would not thrive in such an environment due to his rigidity, his need for supervision, and his difficulties with motor planning and sequencing.

         In concluding that the TEACCH methodology was nonetheless appropriate for R.P., the SRO relied on Duquette's representation that she tailored the implementation of the method to the individual needs of each student. While the SRO noted McCourt's opinion that the TEACCH methodology was inappropriate, he determined that "the parent's concerns regarding . . . the TEACCH methodology utilized in the assigned 6:1[:]1 classroom are not supported by the preponderance of the evidence contained in the hearing record." (SRO Decision at 18.) The SRO's conclusion was not "contrary to the overwhelming weight of the evidence." R.E., 694 F.3d at 194. Rather, the SRO's analysis of the TEACCH methodology "is precisely the kind of educational policy judgment to which [courts] owe the state deference if it is supported by sufficient evidence, as is the case here." R.E., 694 F.3d at 192; see also Rowley,

458 U.S. at 208 ("[O]nce a court determines that the requirements of the Act have been met, questions of methodology are for resolution by the States.").

C. Provision of a FAPE

Because the IEP was procedurally and substantively adequate, this Court defers to the SRO's determination that the DOE offered R.P. a FAPE for the 2010-11 school year. Accordingly, this Court expresses no view regarding the appropriateness of the Rebecca School or whether equitable considerations support Reyes's reimbursement claim. See M.C. ex rel. Mrs. C. v. Voluntown Bd. of Educ., 226 F.3d 60, 66 (2d Cir. 2000) ("Only if a court determines that a challenged IEP was inadequate should it proceed to the second question.").

CONCLUSION

For the foregoing reasons, the DOE's motion for summary judgment is granted and Reyes's motion for summary judgment is denied. The Clerk of the Court is directed to terminate all pending motions, mark this case closed, and enter judgment for the New York City Department of Education.

Dated: December 11, 2012
   New York, New York

             SO ORDERED:

             WILLIAM H. PAULEY III
                U.S.D.J.

*Counsel of Record:*

Erin McCormack-Herbert, Esq.
Michael D. Hampden, Esq.
Partnership For Children's Rights
271 Madison Avenue 17th Floor
New York, NY 10016
*Counsel for Plaintiff*

Emily Sweet, Esq.
NYC Law Department, Office of the Corporation Counsel
100 Church Street
New York, NY 10007
*Counsel for Defendant*